**SO ORDERED.**

**SIGNED August 19, 2010.**



_____
STEPHEN V. CALLAWAY
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-11674 |
| HAROLD L. ROSBOTTOM, JR.<br>DEBTOR | CHAPTER 11 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING ISSUANCE OF ORDER APPROVING SALE OF MEMBERSHIP INTERESTS IN OHIO RIVER AMUSEMENT, L.L.C. AT PRIVATE TO SALE FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS AND FOR OTHER RELIEF**

Considering the **MOTION FOR ORDER AUTHORIZING THE SALE OF DEBTOR'S MEMBERSHIP INTERESTS IN OHIO RIVER AMUSEMENT, L.L.C. PURSUANT TO 11 U.S.C. §363(b) AND (f) TO GMS GROUP, LLC FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS AND FOR OTHER RELIEF** (the "*Sale Motion*") (Docket Entry #1108), the Court issues these **FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING ISSUANCE OF ORDER APPROVING SALE OF MEMBERSHIP INTERESTS IN OHIO RIVER AMUSEMENT, L.L.C. AT PRIVATE**

-1-

**TO SALE FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS** AND FOR OTHER RELIEF ("*Findings and Conclusions*"), as follows;

1.

This Court has jurisdiction and authority to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). Venue of this case in this district is proper under 28 U.S.C. § 1409. The statutory predicate for the relief sought herein is Section 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 6004.

2.

Written notice of the Sale Motion and of the Court's hearing thereupon (along with the proposed forms of these Findings and Conclusions and the Sale Order (as defined within the Sale Motion) have been shown to have been provided to all parties on the mailing matrix of this case. Said notice was adequate and timely, and given in conformity with this court's order setting hearing, and this Court therefore finds the same to be good and sufficient in the circumstances now confronting the Trustee and this Estate to bind all holders of Liens and/or Claims, as well as all known or unknown creditors, claimants, and other parties in interest to these bankruptcy proceedings. Cause exists sufficient to justify the Court's determination to hold its hearing on the notice and timing now utilized notwithstanding any otherwise conflicting requirement of Rule 2002(a)(2) FRBP, which notice period(s) have been waived properly and in accordance with Rule 9006, FRBP.

3.

The Trustee has determined to close the sale of the estate's membership interest in ORA to the Purchaser[1] in accordance with the Memorandum of Intent and in conformity with the Sale Order submitted in connection with the Sale Motion.

4.

The Court approves the Sale Motion as being in the best interests of the creditors and the estate, hereby adopting the assertions by the Trustee made within the Sale Motion as its findings with respect to the absence of value to the estate attributable to the membership interest in ORA,, the probability of continued drain on cash and other resources of affiliated entities such that the value of such entities to the estate would be diminished without the sale as proposed within the Sale Motion, and the propriety of the Trustee's business judgment in agreeing to the Sale and terms of the Memorandum of Intent:

> In an effort to determine the value so as to be able to realize upon its 49% equity stake in ORA, the Trustee through work done by the CFO of Rosbottom Interests, has undertaken to complete financial statements for the 2009 year end and as well, financial statements during 2010, that reflect actual reconciliations of account data, bank statements, etc. What has been determined by the Trustee is that ORA has during prior years operated at a loss, and given this loss has required cash infusions from affiliated entities, particularly Rosbottom Employees, LLC, Rosbottom Interests, LLC, and Nitro Gaming, LLC. The trustee further attempted through the operations side of Rosbottom Interests to revamp operations to determine whether it could operate ORA in a manner more profitable than previously. What has been determined is: (i) ORA had historically been unable to pay its annual license fees, requiring cash infusions of approximately $250,000 per year from Rosbottom entities (with the hope of repayment throughout the year thereafter); (ii) the administrative cost of operating ORA from Louisiana was a terrible drain on resources, especially given the operational, administrative and accounting needs to be met by the Trustee for the other Rosbottom owned and affiliated entities; (iii) ORA is in default upon a seller note to the other 49% owner of the company ($500,000, though there may be something of a claim for partial offset); (iv) the third owner of ORA, a 2% member, has determined to abandon his membership interest, creating a regulatory problem due to the requirement that at least two (2) members be West

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Sale Motion.

-3-

Virginia residents; (v) in addition to the annual fee that ORA could not afford to pay, within a short period of time all licenses in the state of West Virginia would have to be re-bid for a new grant of license (upon information and belief the bid price has been set at $4,000 per machine, which would require an additional cash outflow of approximately $1 million for the company); (vi) it was not in the best interest of the Rosbottom related enterprise to fund either the license fees, further administrative costs, or the amounts that would be required for the re-bid price. In addition, the person overseeing operations for Rosbottom Interests attempted to discern whether there is a current market for the membership interest to third parties (notwithstanding restrictions on transfer contained within the operating agreement of ORA and the change of control provisions of the credit agreement with GMS), to no avail. Given the inability of ORA to fund the license fees without cash infusion from GMS (as it held a first position security interest on the operating assets, raising cash outside the scope of its lien claim was to ORA impossible) the ability of the trustee to effectively market the membership interest was severely limited. As a result, the Trustee and GMS have settled upon the relief requested in this motion as the proper course of action.

5.

Although Section 363 of the Bankruptcy Code does not set a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, the Fifth Circuit Court of Appeals, in construing this provision, has required that it be based upon the sound business judgment of the debtor. *In re Continental Airlines, Inc.*, 780 F. 2d 1223 (5th Cir. 1986), *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983).

6.

When a Trustee proposes to sell its business assets pursuant to Section 363(b) of the Bankruptcy Code, the bankruptcy court can consider several factors in determining whether to approve the sale, including: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether a transaction has been proposed and negotiated in good faith; (iv) the proportionate value of the asset to the estate as a whole; (v) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property; and (vi) whether the asset is increasing or decreasing in value. See *Continental Airlines*, 780 F.2d at 1226; See also, *Committee of Equity Security Holders v. Lionel Corp. (In*

-4-

*re: Lionel Corp.)*, 722 F.2d 1063, 1071 (2nd Cir. 1983). The court concludes that the Sale should be approved as an exercise of the sound business judgment of the Trustee. The Court expressly finds that the mutual releases provided for in the Memorandum of Intent are of benefit to the Estate if for no other reason than costs and expenses of potential litigation are avoided.

7.

The debtors spouse in community has consented to the sale made subject of the Sale Motion, has waived her right of first refusal under section 363(i), and has approved the form of the Sale Order.

8.

Gerald H. Schiff (the "*Trustee*") shall be and is hereby authorized to sell to Purchaser the membership interest of Harold L. Rosbottom, Jr. (the "*Debtor*"), the Debtor's estate and as applicable the Debtor's spouse (Leslie F. Rosbottom) in ORA (the "*Property*") in accordance with and subject to (i) the Memorandum of Intent, and (ii) the Sale Order submitted by the Trustee (with consent) that will be issued by the Court.

9.

The sale of the property ("*Sale*"), upon closing: (i) shall be a legal, valid and effective transfer of the Property, and (ii) shall vest Purchaser with all right, title, and interest of the bankruptcy estate of the Debtor in and to the Property free and clear of all (a) mortgages, security interests, privileges, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, easements, restrictions or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (the foregoing collectively referred to herein as "*Liens*") and all (b) debts arising in any way in connection with any acts of the Debtor, claims

(as that term is defined in the Bankruptcy Code), obligations, demands, guaranties, options, rights, contractual commitments, executory contracts, unexpired leases, employment agreements, restrictions, rights of lesion beyond moiety, co-owner, community property or other spousal rights, tort claims, product liability claims, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise (the foregoing collectively referred to as "*Claims*" herein).

10.

The Property is to be transferred to Purchaser under and pursuant to the Sale Order, and shall be transferred free and clear of all Liens and Claims of any kind or nature, except as otherwise expressly provided by the terms of the Memorandum of Intent and the Sale Order, including the Claims and Liens of GMS against ORA and any person or entity whatsoever, recognizing however the releases provided for herein and within the Memorandum of Intent. In the event there exist such Liens or Claims that would and/or do encumber the Membership Units, such Liens and/or Claims will attach to the proceeds of the Sale.

11.

The Court further finds that all transactions and instruments contemplated under the terms of the Sale shall be specifically enforceable against and binding upon, and not subject to rejection or avoidance by the Estate, the Trustee, creditors of the Estate, and/or any other parties in interest, and any successors of the Estate, including any subsequent trustee appointed in any subsequent or converted case of the Debtor under Chapter 7 of the Bankruptcy Code.

12.

The Court finds that by virtue of the Sale authorized by the Sale Order, the Purchaser will not be a successor to the Debtor upon any theory of law or equity, and Purchaser shall have no liability for any obligation, Claim or Lien of or against this Estate, the Debtor or any affiliate of the Debtor as a result of any application of theories of successor liability. The Sale of the Property to Purchaser does not and will not subject or expose Purchaser to any liability, claim, cause of action or remedy by reason of such Sale under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based directly or indirectly upon any theory of tort, creditors' rights, equity, antitrust, environmental rule or regulation, successor or transferee liability, labor law, de facto merger, or substantial continuity.

13.

The Court further finds (i) that the Sale Order shall be immediately effective and executory upon entry on the docket of the record of this case, and that the fourteen (14) day stay provided by FED. R. BANKR. PROC. 6004(h) shall be abrogated and waived by the Sale Order, so as to allow the Trustee and Purchaser to proceed immediately to effectuate the closing and transfers contemplated by and within the Sale Motion and the Sale Order, (ii) that unless the Sale Order shall be stayed by means of an order issued by a Court with authority to stay the effectiveness of the Sale Order, the closing of the Sale shall be concluded within the deadline established by the parties, and (iii) that nothing in the Sale Order shall affect any of rights of Purchaser or the bankruptcy estate except as specifically set forth therein.

14.

The Memorandum of Intent and related agreements were negotiated and have been entered into by the Trustee and Purchaser in good faith, from arm's length bargaining positions,

-7-

and without fraud or collusion. The consideration to be realized by the Debtor and the Estate is fair and reasonable. The purchaser has acted in "good faith" within the meaning of section 363(m) of the bankruptcy code, and is entitled to the protections afforded thereby.

15.

The Trustee should be authorized, pursuant to 11 U.S.C. §§ 363(b), 363(f), 363(m) and 362, (i) to execute and deliver, to perform under, and to consummate and implement the terms of the Sale, pursuant to the terms of the Sale Motion, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale, (ii) to take all further actions as may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring the Property to the Purchaser as may be necessary or appropriate to the performance of the obligations contemplated by the Sale, and (iii) to execute any and all documents on behalf of the estate or affiliated third parties to effectuate the terms and conditions of the memorandum of Intent.

16.

The Court has expressly authorized the submission of these Findings and Conclusions by counsel for the Trustee, has independently reviewed these Findings and Conclusions and has determined that they should be issued to supplement any oral findings made by the court at hearing upon the Sale Motion.

17.

The Court finds and concludes that it should retain jurisdiction to hear and determine all matters arising from or related to the Sale, and the documents executed and delivered in connection with the Sale and the Sale Order.

18.

Upon the consummation of the transactions contemplated and approved by this Order, the Trustee, the Estate and the Debtor shall no longer be a member, manager or agent of the Company, and Antietam, LLC shall no longer be the Manager under the Management Agreement described within the memorandum of Intent and Sale Motion.  Further, upon consummation of the transactions contemplated and approved by this Order ORA, GMS, Savageot, the Trustee, the Estate, the Debtor and affiliates of the Debtor holding claims against ORA and/or GMS shall have executed the required mutual releases.  Notwithstanding the releases to be executed, the Court finds:  (i) that the Trustee, the Estate, the Debtor, and affiliates of the Debtor will be deemed to be released by Purchaser, GMS, Savageot and ORA upon entry of the Sale Order from and against any and all claims, duties, obligations, entitlements or other burdens of whatever type or description, expressly including any such duties or obligations as may have arisen or might otherwise be claimed or asserted with respect to the Management Agreement and/or the Debtor or the Trustee's operation or management of (including any alleged failure to manage or operate) ORA at any time through the date of the Sale Order, except only that Purchaser shall retain the right to enforce the terms of the Memorandum of Intent and the Sale Order; and (ii) Purchaser, GMS, Savageot and ORA will be deemed to be released by the Trustee, the Estate, the Debtor, and affiliates of the Debtor upon entry of the Sale Order from and against any and all claims, duties, obligations, entitlements or other burdens of whatever type or description, expressly including any such duties or obligations as may have arisen or might otherwise be claimed or asserted as management or other fees, reimbursements, debts or other obligations of whatever type or description owing by ORA, Purchaser or GMS at any time

through the date of the Sale Order, except only that the Debtor, this Estate and the Trustee shall retain the right to enforce the terms of the Memorandum of Intent and the Sale Order.

19.

In light of these Findings and Conclusions, the Court determines that the Trustee should be authorized, pursuant to 11 U.S.C. §§ 363(b), 363(f), 363(m) and 362, (i) to execute and deliver, to perform under, and to consummate and implement the terms of the Sale, pursuant to the terms of the Sale Motion, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale, and (ii) to take all further actions as may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring the Property to the Purchaser as may be necessary or appropriate to the performance of the obligations contemplated by the Sale. The Court further authorizes and directs the Purchaser to perform in accordance with the memorandum of Intent and the Sale Order.

20.

The Sale shall be "AS IS," without any warranty of any kind or nature even as to title and/or return of all or any part of the purchase price.

# # #

**FINDINGS AND CONCLUSIONS PREPARED AND SUBMITTED BY:**

/s/ Louis M. Phillips
Louis M. Phillips, Bar No. 10505
Gordan, Arata, McCollam, Duplantis & Eagan LLP
One American Place
301 Main Street, Suite 1600
Baton Rouge, Louisiana 70801-1916
***ATTORNEY FOR GERALD H. SCHIFF, TRUSTEE***

**FINDINGS AND CONCLUSIONS APPROVED
AS TO FORM AND SUBSTANCE BY**:

/s/ R. Joseph Naus
R. Joseph Naus   (#17074)
**WIENER, WEISS & MADISON**
A Professional Corporation
333 Texas Street, Ste. 2350
P. O. Box 21990
Shreveport, Louisiana  71120-1990
318-226-9100
318-424-5128, facsimile

AND

/s/ David S. Rubin
David S. Rubin   (#11525)
**KANTROW, SPAHT, WEAVER & BLITZER**
A Professional Law Corporation
445 North Boulevard, Suite 300 (70802)
P.O. Box 2997
Baton Rouge, LA  70821-2997
225-383-4703
225-343-0630, facsimile
***ATTORNEYS FOR LESLIE F. ROSBOTTOM***

*/s/* Paul Douglas Stewart, Jr.
Paul Douglas Stewart, Jr. (La. #24661)
***STEWART ROBBINS & BROWN, LLC***
P. O. Box 66498
Baton Rouge, LA
70896-6498
(225) 231-9998 Telephone
(225) 709-9467 Fax
***ATTORNEYS FOR HAROLD L. ROSBOTTOM, JR.***

*/s/* Thomas J, Magill
Thomas J. Magill/Partner
**QUARLES & BRADY LLP**
300 No. LaSalle Street
Suite 4000
Chicago, Illinois 60654-3422
Direct Dial: (312) 715-5024

-11-

Direct Fax: (312) 632-1724
E-mail: tjm@quarles.com
***ATTORNEYS FOR GMS GROUP, LLC AND SMG REALTY, LLC***

AND

/s/ <u>Christopher S. Savageot</u>
Christopher S. Savageot