**SO ORDERED.**

**SIGNED August 19, 2010.**



_____
**STEPHEN V. CALLAWAY
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| IN RE:<br><br>HAROLD L. ROSBOTTOM, JR.,<br><br>    DEBTOR | CASE NO. 09-11674<br><br>CHAPTER 11<br><br>JUDGE STEPHEN V. CALLAWAY |

**FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER
APPROVING OF SETTLEMENT AND COMPROMISE OF PENDING LITIGATION**

      **CONSIDERING** the MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE OF PENDING LITIGATION (Doc. #1118) (the "*Compromise Motion*") filed by Gerald H. Schiff ("*Trustee*"), in his capacity as the Chapter 11 Trustee for the bankruptcy estate (the "*Estate*") of Harold L. Rosbottom, Jr. ("*Rosbottom*" or "*Debtor*"), the Court issues these FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER APPROVING OF SETTLEMENT AND COMPROMISE OF PENDING LITIGATION ("*Findings and Conclusions*"), as follows:

1. This Court has jurisdiction and authority to hear and determine the Compromise Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N);

2. Venue is proper under 28 U.S.C. § 1409;

3. The statutory predicate for the relief sought in the Compromise Motion is FED. R. BANKR. PROC. 9019(a);

4. Notice of the Compromise Motion was proper and parties-in-interest have received appropriate opportunity to present objections and/or responses to the Court;

5. Through arm's length discussions, the parties to the foregoing litigation have agreed to the settle and compromise any and all claims arising therefrom, as summarized below:

    - The Turner Parties have offered, and Trustee has agreed to accept, on behalf of the Rosbottom Parties, including the Estate, the sum of $180,000 (the "***Estate Settlement Fund***") in exchange for a complete release of any and all claims and defenses of any nature or kind that the Rosbottom Parties have or could have asserted against the Turner Parties in the Litigation.

    - The Turner Parties have agreed to release any and all claims and defenses of any nature or kind that the Turner Parties have or could have asserted against the Rosbottom Parties, including the Estate, in the Litigation.

6. FED. R. BANKR. PROC. 9019(a) provides that the Court may approve a compromise on Trustee's motion after notice and a hearing. *In re Schmolke*, 2009 WL 528758, *2 (Bankr. M.D. La. 3/2/2009).

7. A compromise in a bankruptcy should be approved only if the compromise is "fair and equitable and in the best interest of the estate." *Id.* (citing *In re Foster Mortgage Co.*, 68 F.3d 914, 917 (5th Cir. 1995); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).

8. A bankruptcy court considering approval of a proposed settlement must evaluate: (a) The probability of success in the litigation, with due consideration for the uncertainty in fact and in law; (b) The complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (b) All other factors bearing on the wisdom of the compromise. *Schmolke*, 2009 WL 528758 at *2 (citing *Jackson Brewing*, 624 F.2d at 602). Trustee's opinion is entitled to great weight. *Schmolke*, 2009 WL 528758 at *2 (citing *Matter of Cajun Elec. Power Co-op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) ("The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision…"); other internal citations omitted).

9. However, the Court should independently evaluate the reasonableness of the proposed compromise. *Id*. (internal citations omitted).

10. The Court approves the Compromise Motion as being fair and equitable and in the best interests of the creditors and the Estate, hereby adopting the assertions by Trustee made within the Compromise Motion as its findings with respect to the compromise and settlement, and the propriety of Trustee's judgment in agreeing to the compromise and settlement as follows:

   A. On or about May 17, 2010, Turner Windham, L.L.C. ("***Turner Windham***")[1] initiated communications with Trustee regarding the settlement and compromise of certain litigation pending in Caddo Parish.

   B. Turner Windham's members are John S. Turner, Jr. ("***Turner***") and William C. Windham ('***Windham***").

   C. The litigation relates to property formerly owned by the Hoffos family situated near the intersection of Highway 157 and Interstate 20 in Webster Parish, Louisiana (the "***Property***").

   D. As early as 1997, Nitro Gaming, Inc. ("***Nitro***"), Louisiana Gaming Corp. ("***LGC***"), and Rosbottom (collectively, the "***Rosbottom Entities***") entered into

---
[1]

various agreements with the Hoffos family to construct and operate a truck stop with video poker devices on the Property.

E. In particular, Nitro Gaming executed a Video Poker Participation Agreement dated November 30, 1997 with the Hoffos family, and Nitro Gaming executed a second Video Poker participation Agreement dated December 31, 1998 (the "***Second Hoffos Agreement***").

F. One of the Rosbottom Entities, or an affiliate, owned and operated a video poker facility at a truck stop known as "Trucker's Paradise" at or near the intersection of Highway 531 and Interstate 20.

G. Trucker's Paradise was located approximately six miles from the Property. The Rosbottom Entities never constructed a truck stop facility on the Property. Various disputes between Nitro Gaming and the Hoffos family culminated in a lawsuit styled, *Nitro Gaming, Inc. v. D.I. Foods, Inc. et al.*, 435208, First Judicial District Court, Caddo Parish, State of Louisiana (the "***Hoffos Lawsuit***").

H. The Hoffos Lawsuit was eventually resolved pursuant to a Compromise Agreement that was signed on January 9, 2002.

I. Pursuant to paragraph 8 of the Compromise Agreement, the Hoffoses were given eighteen months to make arrangements with another operator and to construct, open, and turn on the video poker machines at a truck stop on the Property.

J. In pursuit thereof, the Hoffos parties executed a Video Poker Participation Agreement with Southwest Gaming of Louisiana dated January 2, 2002.

K. Southwest Gaming asked Turner to finance the construction of a truck stop on the Property, which he did, taking two separate mortgages on the Property as collateral.

L. However, in late 2002, Southwest Gaming defaulted on its loans from Turner;

M. Turner then took steps to foreclose on the Property.

N. During this time, Turner became aware that the Rosbottom Entities had possible claims against the Property by virtue of the Compromise Agreement, and questions arose as to whether Turner's rights under his mortgages were superior to the right of the Rosbottom Entities under the Compromise Agreement.

O. Rather than continue to dispute their respective claims to the Property, Turner and Dixie Inn Junction, L.L.C. (individually, "***Dixie Inn***", together with Turner and related entities, collectively, the "***Turner Entities***"), and the Rosbottom Entities amicably resolved their claims.

P. In October 2003, the Turner Entities and the Rosbottom Entities executed an agreement in principle (the "***Agreement in Principle***").

Q. Pursuant to section 1.1 of the Agreement in Principle, the parties contemplated that the Rosbottom Entities would transfer a 50% interest in the

Compromise Agreement and the Second Hoffos Agreement to the Turner Entities.

R. Section 1.2 also contemplated that the Turner Entities would transfer a 50% interest in Turner's mortgages to the Rosbottom Entities.

S. In section 1.3 of the Agreement in Principle, the parties acknowledged that there would be "additional terms and additional consideration paid by the respective transferees for the respective undivided participation interests."

T. In addition, the parties agreed that, "The additional terms, as well as the amount and terms of payment of the cash portions of the consideration, shall be set forth in the final agreements."

U. While the Agreement in Principle had terms stating that the Agreement in Principle was binding on the parties, section 4.8 of the Agreement in Principle provided that "the covenants and agreements of Section 1.1 and 1.2 are subject to being reduced to writing in comprehensive final agreements to be signed by all of the parties."

V. The Agreement in Principle also provided means by which the parties could terminate the agreement.

W. Section 2.5 states neither group would conduct further discussions or negotiation with the Hoffos family "unless his Agreement is terminated in accordance with its provision set forth in Article 4 below."

X. Section 4.9 stated – This Agreement may be terminated by either party upon giving all other parties 14 days advance written notice of the effective date of the termination.

Y. Finally, section 2.3 of the Agreement in Principle provides, in part, "As of the date of this Agreement, the parties intend to acquire the interest of Charlotte Hoffos Lott in and to the indebtedness and the lien created under the Credit Sale Warranty Deed. In the event the parties are able to acquire that interest, the parties agree to execute and deliver to each other an instrument sufficient to subordinate the lien of the Credit Sale Warranty Deed to Turner Mortgage II."

Z. Charlotte Hoffos Lott ("*Lott*") had owned a one-third interest in the Property.

AA. However, in February 2000, Lott sold her interest in the Property to her brothers, William K. Hoffos and John Lee Hoffos, which was secured by a second lien on the Property in favor of Lott (the "*Lott Lien*");.Pursuant to the Agreement in Principle, Turner, Rosbottom, and Windham organized Silver City, L.L.C. ("*Silver City*") to acquire the Lott Lien.

BB. Silver City was eventually able to acquire the Lott Lien. Rosbottom loaned Silver City $259,000 to acquire the Lott Lien.

CC. The Agreement in Principle was executed in October 2003.

DD. Almost two and one half years later, in February 2006, (1) the parties had not reached an agreement on the additional terms contemplated in the

Page 5 of 9
FINDINGS AND CONCLUSIONS

09-11674 - #1160  File 08/19/10  Enter 08/19/10 13:53:19  Main Document  Pg 5 of 9

Agreement in Principle, (2) the parties had not reached agreement on the addition consideration to be paid in respect of the contemplated transfers of undivided participation interests, (3) the parties had not reduced the final comprehensive agreement to writing that had to be signed by all of the parties, (4) the construction of the truck stop on the Property, which had been discontinued when Southwest Gaming defaulted on its loans, had not been resumed, (5) no video poker devices had been installed or turned on at the Property, and (6) Trucker's Paradise was continuously operating.

EE. Under the foregoing circumstances, Dixie Inn Junction purportedly exercised its right to terminate the Agreement in Principle, and Dixie Inn Junction sent a purported terminate letter to all the other parties.

FF. In that letter, however, Dixie Inn wrote, "In connection with the Agreement in Principal, Silver City, L.L.C. acquired the $259,000 promissory note from Charlotte Hoffos Lott. It is our understanding that Mr. Rosbottom provided the funds for that acquisition. As a result of the foreclosure of the Turner mortgage the vendor's lien securing the Lott promissory note was cancelled. Therefore, though not required by the Agreement in Principal, we are tendering the sum of $259,000 to Mr. Rosbottom to reimburse him for the funds he provided for the acquisition of the Lott promissory note."

GG. The sum of $259,000 was tendered to the Rosbottom Entities.

HH. However, Rosbottom caused the tender to be returned, asserting that he was entitled to a percentage of video poker revenues.

II. As a result of the termination letter and Rosbottom rejection of the $259,000 tender, the parties filed two separate civil actions in Caddo Parish in March 2006,[2] which were subsequently consolidated.

JJ. These two consolidated civil actions are: *Dixie Inn Junction, L.L.C. et al. v. Nitro Gaming, Inc. et al.*, 501485, First Judicial District Court, Caddo Parish State of Louisiana, and *Nitro Gaming, Inc. et al. v. Dixie Inn Junction, L.L.C. et al.*, 501491, First Judicial District Court, Caddo Parish, State of Louisiana (collectively, the "***Litigation***").

KK. While the Turner Entities did file a motion for summary judgment some time ago, this motion is pending and no action has been taken since.

LL. Though the Trustee has determined it possible to prevail in the Litigation, the Trustee submits that the receipt by the Estate of the Estate Settlement Fund without further litigation and litigation cost is well within the sound business judgment and statutory and jurisprudential dictates governing settlement of estate claims.

---

[2] Any and all parties aligned with Turner and Dixie Inn Junction in the Litigation are referred to as the "***Turner Parties***." Any and all parties aligned with Nitro Gaming and Rosbottom, including the Estate, as referred to as the "***Rosbottom Parties***."

MM. The issues raised within the litigation are complex and fact extensive (and intensive). As well, the Agreement in Principle is awkward in that it purported to be binding while at the same time containing provisions clearly meant to be subject to further negotiation and agreement. Further, the Agreement in Principle provides a mechanism for termination which requires only written notice (which was given). Finally, and perhaps most importantly, further litigation would require extensive pre trial work and would require that the Estate prove facts in the face of opposing versions of reality (such as why the Rosbottom entities did not proceed with any construction for in excess of 24 months).

NN. The Trustee has focused upon the fact that Rosbottom funded the $259,000 purchase of the described mortgage position and upon the prior correspondence wherein that amount was tendered to Rosbottom. However, the Trustee recognizes that the tender was qualified and did not constitute an admission of liability therefor, and as well that the mortgage position purchased was intended to be (and was in fact) subordinated to mortgages held by Turner securing funding of actual construction. At the time of the Agreement in Principle, Dixie Inn had already incurred $1.378 million on the project. The accounting was apparently provided as was required by the Agreement in Principle. Defendants argue that the Rosbottom interests did nothing on the project and that as a result the project experienced deterioration, vandalism, etc. Turner/Windham argues that the interest on the debt exceeds $1.5 million, and that there exists a counterclaim against the estate or affiliates to recover on for damages caused by failure to move forward on the project. This assertion of potential responsive claims and the cost of both pursuing the Estate's claims and defending these responsive claims provided the basis upon which the Trustee determined to discount the $259,000 by 1/2 ($130,000) and to settle for the $130,000 plus the initial offer to pay $50,000 in settlement.

OO. Trustee has analyzed the amount of the proposed Estate Settlement Fund and is satisfied that the amount represents a fair settlement of the claims of the Estate against the Turner Parties. The amount is more than three times greater than the initial offer of $50,000. Trustee has attempted to obtain a higher settlement to no avail, and submits that the actual value of the Estate Settlement Fund could exceed a litigated recovery.

PP. The settlement and compromise proposed herein does not affect priorities of distribution set forth within the Bankruptcy Code.

QQ. The settlement and compromise proposed herein if approved will allow for a cessation of the accrual of attorneys' fees and costs both chargeable to the Estate and to the other parties.

RR. The settlement and compromise proposed herein does not require extraordinary action of this Court, but is a straightforward consensual resolution of claims of the Estate and against the Estate and related entities.

As well, it will cause the termination of litigation within the two state court actions described herein.

11. The Court has expressly authorized the submission of these Findings and Conclusions by counsel for the Trustee, has independently reviewed these Findings and Conclusions and has determined that they should be issued to supplement any oral findings made by the Court at hearing upon the Compromise Motion.

12. Based upon the foregoing, the Court finds and concludes that the settlement and compromise, as contemplated in the Compromise Motion, both (i) fair and equitable, and (ii) is in the best interest of the Estate and creditors of the Estate. Accordingly, the Court shall grant Compromise Motion under and pursuant to the Compromise Order entered contemporaneously herewith.

# # #

Findings and conclusions prepared and submitted by:

By: */s/* Louis M. Phillips

Louis M. Phillips (La. Bar No. 10505)
Peter A. Kopfinger (La. Bar No. 20904)
Ryan J. Richmond (La. Bar No. 30688)

GORDON, ARATA, MCCOLLAM,
  DUPLANTIS & EAGAN, L.L.P.
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Phone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com
Email: pkopfinger@gordonarata.com
Email: rrichmond@gordonarta.com

-AND-

Samuel E. Masur (La. Bar No. 01221)

GORDON, ARATA, MCCOLLAM,
   DUPLANTIS & EAGAN, L.L.P.
400 E. Kaliste Saloom Road, Suite 4200
Lafayette, LA 70598-1829
Telephone: (337) 237-0132
Facsimile: (337) 237-3451
Email: smasur@gordonarata.com

*Attorneys for Gerald H. Schiff,
Chapter 11 Trustee*

FINDINGS APPROVED AS TO FORM AND CONTENT

**/s/ R. Joseph Naus**
R. Joseph Naus (#17074)
**WIENER, WEISS & MADISON**
A Professional Corporation
333 Texas Street, Ste. 2350
P. O. Box 21990
Shreveport, Louisiana 71120-1990
318-226-9100
318-424-5128, facsimile
*Attorneys for the Turner Parties*